IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| CHRISTOPHER JOE PARSONS, ) | | |
|     Plaintiff, ) | Civil Action No. 7:20-cv-00319 | |
| ) | | |
| v. ) | MEMORANDUM OPINION | |
| ) | | |
| C/O TRAVIS KELLEY, et al., ) | By:   Joel C. Hoppe | |
|     Defendants. ) |        United States Magistrate Judge | |
| ) | | |

Plaintiff Christopher Joe Parsons, a Virginia inmate appearing pro se, filed this civil rights action against Defendants Travis Kelley, Ryan Phillips, and the Southwest Virginia Regional Jail Authority ("SWVRJA") pursuant to 42 U.S.C. § 1983. *See* ECF Nos. 1, 4, 6. The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF Nos. 27, 28. The matter is currently before the Court on Defendants' Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 23, which has been fully briefed, ECF Nos. 24, 37. The motion will be granted in part and denied in part.

I. Standard of Review

A Rule 12(b)(6) motion to dismiss challenges whether a complaint sets out a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To survive under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" understanding of the plaintiff's cause of action. *Id.*

1

at 679; *see Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("Dismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper."). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) (a court reviewing a Rule 12(b)(6) motion must consider the complaint in its entirety, accept all well-pleaded facts as true, and draw reasonable inferences from those facts in the plaintiff's favor). This "plausibility standard is not akin to a 'probability requirement,'" but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## II. Background

According to the Complaint, on March 8, 2020, while Parsons was in his cell at SWVRJA-Duffield, Defendants Corrections Officers Travis Kelley and Ryan Phillips "physically assaulted [Parsons] for no reason." Compl. 1–3, ECF No. 1. Specifically, Kelley "kicked [Parsons] in the back of the head while [he] was lying on the ground." *Id.* at 3. Kelley's kick "was unprovoked and very unnecessary," and it caused Parsons's head to bleed. *Id.* The officers allegedly left Parsons lying on the floor for seven hours "before they brought a nurse to see [him]." *Id.* at 3. A Corporal Barber witnessed the entire incident, and it was captured by a video camera located outside of Parsons's cell. *Id.* Parsons has experienced urinary trouble and "ha[s] had problems passing out due to the head trauma." *Id.* Parsons seeks damages for pain and suffering. *Id.*; *see also* Pl.'s Br. in Opp'n 4, ECF No. 37.

In their motion to dismiss, Defendants argue that SWVRJA is not a "person" and, thus, cannot be sued under 42 U.S.C. § 1983. Defs.' Br. in Supp. 3, ECF No. 24. Additionally, Defendants assert that SWVRJA is protected by sovereign immunity and Kelley and Phillips are

2

entitled to qualified immunity as "Parsons'[s] pleading or complaint raises no issue with respect to a clearly established right." *See id.* at 3–5. Further, Defendants argue that Parsons's complaint, while not specifying the governing law, fails to state a claim for excessive force or deliberate indifference to a serious medical need under either the Fourteenth or Eighth Amendments. *Id.* at 5–6. Lastly, Defendants assert that Parsons failed to adequately plead damages as he "identified no damages whatsoever other than he was pursuing pain and suffering." *Id.* at 7.

### III. Analysis

A § 1983 claim has two basic elements: "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The facts needed to state a plausible right to relief under § 1983 will depend on the specific constitutional provision at issue, *Iqbal*, 556 U.S. at 677; *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Loftus v. Bobzien*, 848 F.3d 278, 285 (4th Cir. 2017); the capacity in which the plaintiff sued the named defendant, *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985); and, relatedly, the nature of relief sought against that defendant, *Biggs v. Meadows*, 66 F.3d 56, 60–61 (4th Cir. 1995). I consider Defendants' arguments under this framework.

A.    *Defendant SWVRJA*

Section 1983 authorizes suits only against a "person" acting under color of state law. *See* 42 U.S.C. § 1983. It has been repeatedly held that, generally speaking, "[a] local jail . . . cannot qualify as a person subject to being sued under § 1983." *Miller v. SWVRJA-Duffield*, No. 7:21cv10, 2021 WL 1606469, at *1 (W.D. Va. April 26, 2021) (emphasis omitted) (collecting cases); *see also McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 894 (E.D. Va. 1992) ("[T]he jail is not a person under § 1983 . . . it [thus] lacks the capacity to be sued as a jail."). Nevertheless, a regional jail authority can be sued in its own name under § 1983 where "the

action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Miller*, 2021 WL 1606469, at *1 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 558, 690 (1978)). Moreover, the complaint must show that the challenged policy or custom "was 'the moving force' behind the alleged violation of his rights." *Id.* (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

Parsons's complaint does not identify any official custom or "policy promulgated by the SWVRJA" that "played a part," *id.*, in Defendant Kelley allegedly kicking Parsons in the head or in either correctional officer's alleged failure to call a nurse to see Parsons. *See generally* Compl. 1–3. Accordingly, SWVRJA cannot be deemed a "person" for purposes of Parsons's § 1983 suit. Thus, SWVRJA will be dismissed as a Defendant.

B.   *Failure to State a Claim & Qualified Immunity*

Defendants assert that Parsons has failed to state claims for excessive force or deliberate indifference to a serious medical need. They also contend they are entitled to qualified immunity. I will examine these arguments together. Whether a defendant is entitled to qualified immunity requires a two-part analysis: (1) did the defendant's actions violate the plaintiff's constitutional rights, and (2) were those rights "clearly established at the time of the alleged violation." *Raub v. Campbell*, 785 F.3d 876, 880–81 (4th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Parsons's allegations offer facts sufficient to make out a plausible claim that Kelley violated his constitutional rights, and that such rights were clearly established at the time of the violation.

While Defendants correctly assert that Parsons's complaint does not make clear whether he was a pretrial detainee, in which case his claims would come under the Fourteenth

Amendment's due process protections, or a convicted prisoner serving a sentence of incarceration, in which case his claims would come under the Eighth Amendment's prohibition against cruel and unusual punishments, *see Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015), this distinction is immaterial because Parsons's allegations suffice under either standard. *Cf. Martin v. Gentile*, 849 F.3d 863, 870 (4th Cir. 1988) ("The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner.").

    1.    *Excessive Force*

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). In assessing a claim of excessive force under the Eighth Amendment, "[t]he 'core judicial inquiry' . . . [i]s not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Even a slight injury can give rise to an Eighth Amendment excessive force claim where the force was inflicted gratuitously. *Id.* at 40.

In determining whether a prison official acted maliciously or sadistically in applying force, courts use a four-factor test:

(1) the need for the application of force;

(2) the relationship between the need and the amount of force that was used;

(3) the extent of any reasonably perceived threat that the application of force was intended to quell; and

(4) any efforts made to temper the severity of a forceful response.

*Thompson*, 878 F.3d at, 99; *see Whitley v. Albers*, 475 U.S. 312, 319–20 (1986). Although a claim of excessive force under the Eighth Amendment implicates the subjective reasonableness of the officer's actions, *see Wilkins*, 559 U.S. at 37; *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019) ("An inmate's Eighth Amendment excessive force claim involves both an objective and subjective component."), a claim of excessive force under the Fourteenth Amendment requires that the force used must be objectively reasonable, *Kingsley*, 576 U.S. at 391.

Considering the well-pled, albeit sparse, factual allegations in the Complaint, each of these factors supports allowing the claims to proceed against Kelley. Parsons alleges that Phillips and Kelley "physically assaulted [him] for no reason." Compl. 2. Kelley kicked Parsons in the head, and the force used was both "unprovoked and very unnecessary." *Id.* at 3.

The first factor thus favors Parsons as, taking his allegations as true, the use of force was unnecessary. Likewise, the second factor is satisfied as any amount of force would be considered excessive under these circumstances. Further, the Complaint does not reveal any actions taken by Parsons that could have reasonably been perceived as a threat. Lastly, Parsons's allegations do not indicate that Kelley attempted to temper the severity of his use of force.

Thus, Parsons's allegations against Kelley describe a violent, unprovoked, and gratuitous attack whereby Kelley applied force "maliciously and sadistically" and without any legitimate, good faith purpose. *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 1). As such, Parsons has stated a plausible claim that Kelley violated his rights under either the Fourteenth Amendment or the Eighth Amendment by subjecting him to excessive force.

On the other hand, Parsons does not identify any specific act that he contends Phillips committed against him. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution."). Parsons does not describe any amount of force that Phillips allegedly used or the effects of any such force. Parsons's allegation that Phillips "physically assaulted" him is too conclusory for the Court to find that Phillips's "own individual actions," *id.*, amounted to excessive force. *Cf. Broadnax v. United States*, No. 3:15cv2460, 2015 WL 9074637, at *5 (S.D. W. Va. Nov. 20, 2015) (recommending dismissal with leave to amend where prisoner's complaint alleged that defendant correctional officer "physically assaulted him at the Huntington VAMC on April 4, 2014," but "wholly omit[ted] any description of the circumstances surrounding the alleged assault, how the assault occurred [and] what, if any, injuries [he] sustained as a result of the alleged assault"), *adopted*, 2015 WL 9008947 (S.D. W. Va. Dec. 15, 2015).

Next, the Court must determine whether Parsons's rights were clearly established at the time of the alleged conduct. The alleged assault on Parsons occurred on March 8, 2020. By that time, Supreme Court and Fourth Circuit caselaw had clearly established the unlawfulness of such unprovoked attacks on prisoners. *See Thompson*, 878 F.3d at 103 ("[T]here is a clear consensus among the circuits, including the Fourth, that infliction of pain and suffering without penological justification violates the Eighth Amendment in an array of contexts.").

In *Thompson*, the Fourth Circuit considered whether defendant correctional officers were entitled to qualified immunity against a prisoner's claims of excessive force and deliberate indifference. *See generally id.* at 93–95. Plaintiff alleged that the officers took him on a "rough ride" after he had filed several grievances. *Id.* at 94–95. The "rough ride" consisted of the officers shackling Plaintiff's hands and feet before placing him unbuckled in the middle row of a van; they then drove erratically around windy roads at a high rate of speed. *Id.* at 94–95. The

7

*Thompson* Court recognized that the Fourth Circuit had not previously encountered the precise factual circumstances before it, but observed that "[a] 'general constitutional rule . . . may apply with obvious clarity . . . even though the very action in question has not previously been held unlawful.'" *Id.* at 98 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). There, the Fourth Circuit reversed the district court's grant of summary judgment on qualified immunity grounds, reasoning that such an unprovoked assault violated the plaintiff's clearly established rights. *Id.* at 102 ("Defined at the appropriate level of specificity, prisoners have a right not to be assaulted by their captors.").

In *Thompson*, the Fourth Circuit analyzed the Supreme Court's decisions in *Wilkins v. Gaddy* and *Hudson v. McMillian*, finding that those cases provided the officer who allegedly drove the van with the requisite notice that unprovoked attacks on restrained and compliant prisoners violated clearly established rights. *See Thompson*, 878 F.3d at 102–03 (citing *Wilkins*, 559 U.S. at 37; *McMillian*, 503 U.S. at 7). In those cases, the Supreme Court determined that gratuitous assaults by guards on prisoners, such as punching a prisoner during transport, *McMillian*, 503 U.S. at 4, 12, or slamming an inmate to the ground and beating him after he requested a grievance form, *Wilkins*, 559 U.S. at 34, could set forth conduct that violated the prisoner's constitutional right to be free from excessive force. *Thompson*, 878 F.3d at 102. The Fourth Circuit in *Thompson* found that the conduct in *Wilkins* and *McMillian* was sufficiently similar to the conduct alleged by Thompson that a reasonable officer should have known that a retaliatory "rough ride" was unconstitutional. *Id.* Thus, *Wilkins*, *McMillian*, and *Thompson* "provide officers with fair notice that malicious, unprovoked, unjustified force inflicted on inmates who are compliant and restrained . . .violates the Eighth Amendment." *Thompson*, 878 F.3d at 102–03.

Here, Parsons's allegations of an unprovoked kick to the head bear a stronger resemblance to the alleged assaults in *Wilkins* and *Hudson* than the allegations of a "rough ride" in *Thompson*. Considering the Fourth Circuit's determination that Thompson's "rough ride" violated clearly established law, I readily find that the conduct alleged in the instant case does as well. *See Thompson*, 878 F.3d at 105 ("As is apparent from the case law of eleven federal courts of appeals, the Eighth Amendment protection against malicious and sadistic infliction of pain and suffering applies in a diverse range of factual scenarios."). Thus, Parsons's complaint states a claim that Kelley violated his clearly established right to be free from excessive force.

2. *Deliberate Indifference to a Serious Medical Need*

Likewise, Parsons's complaint states a claim against Kelley for deliberate indifference to a serious medical need. "An Eighth Amendment claim for deliberate indifference to serious medical needs includes objective and subjective elements." *Mays v. Sprinkle*, 922 F.3d 295, 300 (4th Cir. 2021) (citing *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). "A medical condition is objectively serious when it either is 'diagnosed by a physician as mandating treatment' or is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). "The subjective state of mind required is that of 'deliberate indifference' . . . 'to inmate health or safety.'" *Id.* (quoting *Scinto*, 841 F.3d at 225). "[D]eliberate indifference requires that the official have 'had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction.'" *Id.* (quoting *Jackson*, 775 F.3d at 178)).

"The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870. Thus, as

with Parsons's excessive force claim, alleging facts sufficient to state a deliberate indifference claim under the Eighth Amendment likewise suffices to state such a claim under the Fourteenth Amendment. *See Mays*, 992 F.3d at 300 ("[E]ven though Mays's claim arises under the [Due Process Clause], we have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs.").

Although Parson does not allege that the medical need in question—i.e., bleeding from the head where Kelley kicked him—was diagnosed by a physician as requiring treatment, the facts alleged in his complaint support a reasonable inference that this need was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto*, 841 F.3d at 225 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). A lay person would plainly know that lying on the floor and bleeding from the head immediately after being kicked in the head would require medical attention. *Cf. Scarbro v. New Hanover Cnty*, 374 F. App'x 366, 371 (4th Cir. 2010) (holding on summary judgment that inmate "had an objectively serious medical need after the takedown" where the inmate "hit the concrete floor head-first, screamed out in excruciating pain, and was bleeding above his eye" and exhibited signs of concussion). Thus, Parsons sufficiently alleges that he suffered from an objectively serious medical need after Kelly kicked him.

Parsons additionally satisfies the subjective portion of his deliberate indifference claim against Kelley. The Court can reasonably infer that Kelley, after allegedly kicking Parsons in the head, was subjectively aware of the injuries he caused and the risk they posed to Parsons. *See Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101 (4th Cir. 1995) ("[A]n injury might be so obvious that the factfinder could conclude that the guard *did* know of it because he could not have failed to know of it."). Yet, according to

the Complaint, Kelley took no action to secure medical attention for Parsons until seven hours after he kicked him in the head.

Parsons has thus sufficiently alleged that Kelley was subjectively aware of and consciously disregarded Parsons's objectively serious medical need. Parsons has stated a plausible claim that Kelley violated his right to adequate medical care under either the Fourteenth or Eighth Amendment. Nonetheless, the Court concludes that Parsons's conclusory allegation of assault fails to state a claim against Phillips. Although Parsons alleges that no one, presumably including Phillips, took any action to provide him medical care, Parsons has not alleged any facts showing that Phillips knew of Parsons's need for medical care.

Parsons's rights were clearly established at the time of Kelley's conduct. The Fourth Circuit has stated that "[a] prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976." *Scinto*, 841 F.3d at 236.

Parsons alleges that Kelley kicked him in the head causing his head to bleed and then left him in the cell without medical attention for over seven hours. As a result, Parsons has passing out spells and urinary incontinence. Accordingly, Parsons has sufficiently alleged conduct that violated his clearly established right to adequate medical care. As such, the court will deny Kelley's motion to dismiss for failure to state a claim and on grounds of qualified immunity.

C.   *Actual Injury*

Defendants also contend that Parsons's complaint must be dismissed because he has failed to allege an actual injury or damages. In his complaint, Parsons asserts that he was kicked in the head, causing him to bleed, and he has suffered passing out spells and urinary issues resulting from the assault. Compl. 2–3.

In *Wilkins*, a pro se prisoner alleged that a corrections officer had gratuitously assaulted him after the prisoner requested a grievance form. 559 U.S. at 34. The plaintiff alleged the assault resulted in a bruised heel, migraines, back pain, increased blood pressure and dizziness. *Id.* On its own motion, the district court dismissed the complaint for failure to state a claim, asserting that more than a *de minimis* injury is required to make out an Eight Amendment excessive force claim. *Id.* The Fourth Circuit affirmed that decision. *See id.* at *40. The Supreme Court reversed, holding that the key inquiry in excessive force claims is not the extent of the injury, but rather the nature and purpose of the conduct alleged. *Id.* at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Here, Parsons describes having trouble urinating and passing out because of head trauma caused by the alleged assault. These alleged injuries, combined with the allegation of a gratuitous assault, sufficiently state a plausible claim for excessive force under either the Fourteenth Amendment or Eighth Amendment. Thus, Parson has sufficiently pleaded an actual injury.

D.    *Leave to Amend*

Although Parsons's allegations against Phillips are too conclusory to withstand a motion to dismiss, *see Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal citation omitted), the Court will allow him an opportunity to amend his claims against Phillips, Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). It is apparent from Parsons's complaint that he intended to allege Defendant Phillips's involvement in the assault; thus, the Court will

grant Parsons leave to amend his complaint for the purpose of introducing specific facts regarding Defendant Phillips's role in the alleged assault.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 23, will be granted as to Defendants SWVRJA and Phillips and denied as to Defendant Kelley. The Court will grant Parsons leave to amend as to Defendant Phillips. An appropriate order will enter.

The Clerk is directed to send copies of this Order to the parties.

ENTER: September 28, 2021

Joel C. Hoppe
United States Magistrate Judge